# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

CELIA WILKINS,

    PLAINTIFF,

VS.                                                    CASE NO.: CV-10-J-147-E

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Secretary of Health and Human Services. All administrative remedies have been exhausted.

### Procedural Background

The plaintiff is seeking reversal of the Commissioner's decision that her Social Security Disability Benefits are due to be ceased based on substantial improvement. The plaintiff originally began receiving Disability Insurance Benefits effective June 30, 1995, based on findings of anxiety related disorders and musculoskeletal and connective tissue injuries (R. 28). After review in 2000, the plaintiff's benefits continued (R. 28, 32-35). However, a further review in 2004 reached the opposite

conclusion, and the plaintiff's benefits were terminated at the end of April 2004 (R. 31, 36-37). The plaintiff alleges that "the evidence of record was misinterpreted by the ALJ and that the evidence dictates a conclusion that the plaintiff's emotional problems have not improved..." Plaintiff's memorandum (doc. 8) at 2.

The decision to end the plaintiff's benefits was based on a finding of medical improvement, effective February 28, 2004, of the conditions for which she was originally awarded disability benefits (R. 288-291). The plaintiff filed a request for hearing and a hearing in front of an administrative law judge (ALJ) was subsequently held (R. 61, 232-275). The ALJ thereafter rendered an opinion finding that the plaintiff had the residual functional capacity to perform her past relevant work as of February 2004 and therefore her entitlement to benefits ended effective April 2004 (R. 26-27).

The plaintiff appealed this decision to the United States District Court for the Northern District of Alabama. The federal judge to whom the case was assigned, Hon. J. Foy Guin, found that the ALJ gave improper weight to a consultative examiner while refusing to credit plaintiff's treating physician. *Wilkins v. Astrue*, 1:07-cv-1568-JFG, opinion dated June 25, 2008. That court reversed and remanded the case to the Commissioner for proper application of 42 U.S.C. § 423(f) and the regulations, noting that the same place the burden in a termination case on the

Commissioner to show the plaintiff has the ability to engage in substantial gainful activity. *Id., citing Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir.1994). Upon remand, the ALJ entered an opinion finding that the plaintiff had the ability to engage in a limited range of medium work, and that her disability ended February 28, 2004 (R. 295). It is from this decision that the plaintiff now appeals.

The court has considered the record and the pleadings of the parties. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## Factual Background

The plaintiff was born on April 17, 1971 and completed one and a half years of college (R. 348). She testified at her hearing in 2006 that she was unable to work because she had anxiety attacks and panic attacks (R. 335). At her 2008 hearing, the plaintiff again testified that she could not work because of panic attacks, and nervousness, and further mentioned she suffered from leg and back pain and migraine headaches (R. 400).

Medical records relevant to her disability, since the date plaintiff was found to continue to meet the criteria for benefits in 2000, are sparse. The plaintiff was treated from 2002 to 2003 for acute respiratory distress syndrome (R. 145-158). She was found to have no continuing restrictions on this basis (R. 156). Her treating doctor noted in March 2002 that the plaintiff

>would like some medicine for 'nerves.' She is seeing a psychologist who told her that she has several diagnoses that escape me at the moment. This includes borderline obsessive compulsive disorder, depression and I think anxiety or the like. I am not willing to start Paxil and I think she should see a psychiatrist if she wants to go this route.

(R. 158). No records from any such psychologist are contained in the record before this court. The plaintiff was noted to have put on weight which she attributed to "stress related to issues regarding custody and dealing with her husband's ex-wife, etc." but her doctor declined to prescribe any weight loss medications (R. 157).

Medical records from Sylacauga Family Medicine, beginning in 2003, note that the plaintiff needed Zoloft refilled, was seen for a lesion and dermititis, and "F/U Post traumatic stress" (R. 160). On one occasion she was noted to be "pleasant" but "tearful" and would consider counseling (R. 161).

A psychological evaluation in January 2004 by Robert J. Kline, Ph.D., has been the subject of much argument in this case. *See e.g.*, memorandum of plaintiff (doc. 8), at 6-11; 2008 hearing transcript, at R. 373-376, 381-392; 411-413.[1] Dr. Kline

---

[1]The plaintiff asserts that Dr. Kline was not qualified to make any diagnoses of the plaintiff because is in not a licensed psychologist in the State of Alabama, although he was licensed as a psychologist in the State of Pennsylvania and licensed as a professional counselor in the State of Alabama. *See e.g.*, R. 383, 386. However, counsel for plaintiff questioned the Vocational Expert ("VE") at the 2008 hearing concerning what opinions licensed professional counselors may give (R. 411-412). The VE testified that a licensed professional counselor may give an impression, but not diagnosis (R. 412). Thus, the court has considered only Dr. Kline's impressions, but not his diagnoses.

recorded that the plaintiff stated she could leave her house, but was not comfortable when she was away from home (R. 166). She related that she got panicky when she saw someone who resembled the person who shot her in 1995 (R. 166). She further related that she never sought treatment for this because

> she said that she has always thought she could handle it. She reports that Dr. Swearington has her on Zoloft ... and she started taking it a little over a month ago. When asked if it was working, or was it helping, she said that she is able to go out of the house more easily and she stays calmer and, if she does feel panicky, it's less frequent and less intense.

(R. 166). Dr. Kline noted no signs of anxiousness such as restlessness, tremor or sweaty palms (R. 167).

The plaintiff was seen for several sessions with Adelaide Brown, Ph.D., a psychologist beginning in March 2005 on referral from Dr. Swearington, her regular treating physician (R. 185-199). Dr. Brown saw the plaintiff two times in five days and then told Dr. Swearington that the plaintiff had symptoms of post-traumatic stress disorder, panic disorder with agoraphobia, and adjustment disorder with depressed mood (R. 192). Dr. Brown noted the plaintiff's stress had increased in the last year due to learning her son had juvenile diabetes, her efforts to home school her children, and the death of her father (R. 192, 227). An April 2005 session noted the plaintiff's affect as "tense," but recorded that the plaintiff and two friends shared child care responsibilities for each others' children so they could all have some child free time

(R. 186). In June 2005 the plaintiff was noted to be anxious because of her son's blood sugar problems and stressed because a friend had an abusive husband and the plaintiff helped her friend move away (R. 185). The week of July 4th, the plaintiff was going to Myrtle Beach for ten days (R. 185). Dr. Brown noted the plaintiff was doing better and less anxious than previously, but nervously twisted her ring during the entire session (R. 185).

The next record is from October 2005 and noted that the plaintiff was more reclusive (R. 214). The record reflects that the plaintiff disconnected her home phone line, but did speak with her mother twice a day, that she had been frightened because the man who shot her in 1995 was up for parole that week, that her son had to have an insulin pump, and that she had problems with a neighbor who said her son had threatened the neighbor's daughter (R. 214). This record also notes that another neighbor kept coming to the plaintiff's house and staying for hours at a time (R. 215). Dr. Brown, in November 2005, states the plaintiff went to a fall festival and went with a friend to a thrift store (R. 216). No decision had yet been made by the parole board, but the plaintiff did tell the pushy neighbor she could only come over one time a week (R. 216). The plaintiff was focused on having another baby but Dr. Borwn told her with anxiety, panic attacks and agoraphobia, it was not really a good time for her to have a baby (R. 216). Because the plaintiff could not begin fertility treatments

until February or March 2006, Dr. Brown told her that she would support her efforts then (R. 217).

The plaintiff was diagnosed with bronchitis in May 2005 (R. 211, 225). In December 2005 she was noted to be pleasant when she was seen for a rash (R. 224). In May 2006 the plaintiff was seen by the Sylacauga Family Health Center and encouraged to return to Dr. Brown as the plaintiff described her symptoms as worsening (R. 221). These records note plaintiff had stopped taking medications in December because she was trying to get pregnant (R. 221). In August 2006 the plaintiff related she had problems sleeping and panic attacks, although the records note the plaintiff had gotten a job (R. 218). The plaintiff was noted to be pleasant and in no apparent distress, and Sue Owen, CRNP, recorded that the plaintiff seemed to suffer from "anxiety w/depression, insomnia and panic attacks" (R. 219).

In 2007, the plaintiff was treated for leg pain and stress and anxiety and a prescription for Effexor was increased (R. 324). Medical records in 2008 reflect that plaintiff was being treated for a cyst (R. 321-323).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and 2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). To determine if there has been medical improvement, the ALJ must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir.1985); see 20 C.F.R. § 404.1594(c)(1).  There is no presumption of continuing disability. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-287 n. 1 (6th Cir.1994).

## Analysis

The court finds that the ALJ carefully considered the medical records alleged by plaintiff as detailing her allegation that she has not substantially improved since the original finding of disability, specifically those of Dr. Brown. The plaintiff saw Dr. Brown approximately eight times in an eight month period. The plaintiff discontinued her visits with Dr. Brown in November 2005 because "all the therapy sessions would leave me in such a state where I would be debilitated completely from all household work and everything for two or three days afterwards"[2] (R. 380). The court notes the plaintiff's records from Dr. Brown do not reflect that the plaintiff shared this issue with Dr. Brown at any time. Both the October 25, 2005, record and the November 10, 2005, record state "Return Appointment: one week" (R. 214-217), but the plaintiff apparently did not keep these appointments. The final record from Dr. Brown states that

---

[2] The court notes that according to the plaintiff's testimony, she has panic attacks up to eight times a week that debilitate her for up to 24 hours at a time, except for the severe ones, which could cause her to be unable to do anything for longer (R. 403-404). She further claims two to three headaches a week that last for four to eight hours each (R. 405). The ALJ found that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms to be not wholly credible and then set forth detailed reasons for such a conclusion. Credibility determinations about subjective testimony generally are reserved to the ALJ. *See Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir.1987). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995); see also *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir.2005) (per curiam) ("We recognize that credibility determinations are the province of the ALJ.").

> Celia appeared less anxious in today's session. Hand rubbing was reduced from previous sessions. Celia has gotten away from home more in the last two weeks and has also been assertive with her visiting neighbor.

R. 216.

The ALJ notes that although the plaintiff asserts she is disabled due to panic attacks from post traumatic stress, the plaintiff related to Dr. Brown a whole host of stressors in her daily life contributing to her anxiety (R. 292-293). The ALJ concluded

> When I consider Claimant's vacation during a time she was reporting severe agoraphobia, the daily activities that she reported to Dr. Kline, and the evidence that she as experiencing severe stress related to her son, I have to conclude that based on the evidence of record that while she has PTSD, that her mental limitations that arise from PTSD, and not from external factors such as her son's health, do not preclude performing work within the above residual functional capacity.

(R. 293). In giving the plaintiff the benefit of the doubt, the ALJ incorporated the limitation of only occasional interaction with the public other than in small groups of five or less (R. 291). The court can find no error in the ALJ's opinion.

While there is no doubt that the plaintiff continues to suffer from post traumatic stress, anxiety and agoraphobia, there is also substantial evidence in the record to support the ALJ's decision that medical improvement occurred after October 2000, when the plaintiff was evaluated by Dr. Jean M. Badry (R. 141-144). The plaintiff

has sought almost no treatment for her allegedly disabling symptoms, except for an eight month period in 2005.

Based upon a consideration of all of the foregoing, this court finds that the decision of the ALJ is supported by substantial evidence. That decision rests on adequate findings clearly supported in the record. Therefore, the decision of the Commissioner shall be **AFFIRMED** by separate Order.

**DONE** this the 14th day of October, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE